IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

BILLY E. TURNER,                    )
                                    )
             Petitioner,            )          No. C 03-3752 JSW (PR)
                                    )
     vs.                            )          ORDER DENYING PETITION
                                    )          FOR A WRIT OF HABEAS
JIM HAMLET, Warden,                 )          CORPUS
                                    )
             Respondent.            )
_____   )

## INTRODUCTION

Billy Turner, a prisoner of the State of California, has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Per order filed on October 28, 2003, this Court found that the petition, liberally construed, stated cognizable claims under § 2254 and ordered Respondent to show cause why the petition should not be granted. Respondent filed a motion to dismiss the petition as not fully exhausted. Respondent filed its answer on January 22, 2004. Petitioner filed his traverse on April 27, 2005. This order denies the petition for writ of habeas corpus on the merits.

## PROCEDURAL BACKGROUND

On July 29, 1999, a jury convicted Petitioner of first degree residential burglary (Cal. Penal Code § 459/460), and evasion of a peace officer while driving recklessly (Cal. Veh. Code § 2800.2). On January 14, 2000, the trial court found that Petitioner suffered 17 previous "strikes" within the meaning of California Penal Code section 667, subdivisions (b) - (i). On January 19, 2000,

Petitioner was sentenced to a term of incarceration of 40 years to life: 25 years to life for the residential burglary conviction and five years consecutive for each of the three enhancement allegations found true pursuant to Penal Code section 667, subdivision (a).  On December 19, 2001, the conviction was affirmed on direct appeal by the California Court of Appeal, First Appellate District.  The Supreme Court of California denied review on March 30, 2002, and denied review en banc on July 30, 2002.  Petitioner filed the instant petition on August 11, 2003.

In his petition for a writ of habeas corpus, Petitioner asserts ten claims for relief: 1) the trial court violated his due process rights when it denied his motion for an in-person lineup;  2) his right to counsel was violated during an *in camera* hearing;  3) his conviction for evasion of a peace officer was supported by insufficient evidence;  4) the trial court violated his right to counsel when it revoked its appointment of an alternate attorney for the limited purpose of investigating the possibility of a new trial motion; 5) the trial court violated his right to a jury on the prior conviction allegations because his waiver was involuntary; 6) the trial court violated his due process rights by changing its initial decision to stay imposition  of the sentence for evading a peace officer;  7) the trial court's reasonable doubt instruction violated his due process rights; 8) the appellate court violated Petitioner's Sixth and Fourteenth Amendment rights when it refused to provide the transcript of the *in camera* hearing; 9) he suffered ineffective assistance of appellate counsel and 10) trial counsel.

## FACTUAL BACKGROUND

The facts underlying the charged offenses as found by the California Court of Appeal, First District, Division Three, are summarized below.

The charges against appellant arose from the February 5, 1999 burglary of the home of Richard McCullough and a subsequent high speed pursuit of the suspects' car by the police.  At about 11 a.m. on the day of the burglary, Sue Gatsos noticed that the driver of a red Firebird was driving slowly, and the car's

2

occupants appeared to be casing the McCullough house located at the corner of Hummingbird and Killdeer. Gatsos did not see the front of the driver's face. However she did see the driver's profile, his left ear and back of his bald head. Gatsos noted the license plate number of the car, which was registered in appellant's name.

Within minutes of seeing the Firebird, Gatsos located uniformed Antioch Police Officer Chris Valliere, who was seated in a marked police car, parked a short distance way from the intersection of Hummingbird and Killdeer. Gatsos told the officer her observations, described the driver as a black man, but did not mention the license plate number. Within ten seconds of Gatsos' report, Brian Pendleton approached Valliere. Pendleton had seen a large black man holding a computer and coming from the tall hedges near the McCullough house and another person standing near a hatchback type car, with the trunk lid open. Pendleton was unable to identify either of the persons or the specific type of car he had seen.

After speaking with Pendleton, Valliere proceeded to the Hummingbird and Killdeer intersection, where he observed two black men inside a red Firebird or Trans Am, which was parked on the west side of the McCullough house. As the officer attempted to block the Firebird, he turned on the police car's overhead lights. The Firebird then took off, going through a stop sign without stopping. With the police car siren now on, Valliere pursued the Firebird. The Firebird traveled at speeds above the posted limit and at times, the car crossed over into oncoming traffic lanes. After about one mile, Valliere ended his chase for safety reasons.

Shortly thereafter, Tom Fuentes, the Hudson Townhomes' maintenance manager who was standing outside, saw the Firebird enter the Hudson Court Townhomes. The car stopped about 20 yards from Fuentes. Two men jumped out of the car, and then they jumped over a five-foot masonry wall. As the driver ran towards the wall, Fuentes got a look at his face.

Responding to a dispatch about the fleeing Firebird and its occupants, Antioch Police Officer Leonard Orman went to the Hudson Court Townhomes. Orman parked his car and searched for the two men. A few blocks from the Townhomes, the officer found appellant crawling on his hands and knees, perspiring and panting heavily. Orman identified himself as a police officer and told appellant to lie on the ground. Appellant spontaneously stated, "I was only driving the car, I didn't know what was going on, the other guy said he had a warrant, so I ran."

After his arrest, appellant was taken to a nearby schoolyard. The police asked Gatsos and Fuentes to come to the schoolyard to view appellant. Within one or two hours of their initial observations, Fuentes and Gatsos separately viewed appellant in a one-man showup to determine whether he was the person they saw in the car. They both identified him as the driver of the Firebird.

3

At the time of the showup, Gatsos stated that she believed the actual driver had lighter skin color than the person she viewed at the showup. While Gatsos was later shown photographic arrays by the police, she did not identify the driver from any photograph. Nor did Gatsos recall telling the police that one of the photographed men looked similar to the driver of the car. Both Gatsos and Fuentes made in-court identifications of appellant as driver of the Firebird.

Appellant claimed he was not present at the burglary scene. He presented evidence that his cousin, Maurice Green, had access to the Firebird; the police had found Green's fingerprints on the outside of the car; and according to the police, Gatsos had identified a photograph of Green as looking similar to the driver of the Firebird.

*People v. Turner*, No. A090072, slip op. at 2-3 (Cal. Ct. App. Dec. 19, 2001).

## STANDARD OF REVIEW

This court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a state court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A district court may grant a petition challenging a state conviction or sentence on the basis of a claim that was "adjudicated on the merits" in state court only if the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

Under the 'contrary to' clause, a federal habeas court may grant the writ if a state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if a state court identifies the

4

correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. As summarized by the Ninth Circuit: "A state court's decision can involve an 'unreasonable application' of federal law if it either 1) correctly identifies the governing rule but then applies it to a new set of facts in a way that is objectively unreasonable, or 2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable." *Van Tran v. Lindsey*, 212 F.3d 1143, 1150 (9th Cir. 2000) (citing *Williams*, 529 U.S. at 405-07), *overruled on other grounds by Lockyer v. Andrade*, 538 U.S. 63, 70-73 (2003).

"[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 411; *accord Middleton v. McNeil*, 541 U.S. 433, 436 (2004) (per curiam) (challenge to state court's application of governing federal law must not only be erroneous, but objectively unreasonable); *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam) ("unreasonable" application of law is not equivalent to "incorrect" application of law). In deciding whether a state court's decision is contrary to, or an unreasonable application of, clearly established federal law, a federal court looks to the decision of the highest state court to address the merits of the petitioner's claim in a reasoned decision. *LaJoie v. Thompson*, 217 F.3d 663, 669 n.7 (9th Cir. 2000).

The only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is in the holdings of the Supreme Court as of the time of the state court decision. *Williams,* 529 U.S. at 412; *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003). While the circuit law may be "persuasive authority" for the purposes of determining whether a state court decision is an unreasonable

application of Supreme Court precedent, only the Supreme Court's holdings are binding on the state courts and only those holdings need be "reasonably" applied. *Id.*

A federal habeas court may grant the writ if it concludes that the state court's adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Section 2254(d)(2) applies to intrinsic review of a state court's process, or situations in which the petitioner challenges the state court's findings based entirely on the state court record, whereas § 2254(e)(1) applies to challenges based on extrinsic evidence, or evidence presented for the first time in federal court. *Taylor v. Maddox*, 366 F.3d 992, 999-1000 (9th Cir. 2004). The relevant question under § 2254(d)(2) is whether an appellate panel, applying the normal standards of appellate review, could reasonably conclude that the state court findings are supported by the record. *Lambert v. Blodgett*, 393 F.3d 943, 978 (9th Cir. 2004).

## DISCUSSION

## I.      Denial of Motion for an In-Person Lineup

Petitioner contends that his rights to due process and equal protection were violated when the trial court denied his pre-trial motion for an in-person lineup. Petitioner argues that Gatsos' identification of Petitioner as the driver of the Firebird was suspect because at the time that she identified Petitioner in the schoolyard as the car's  driver, she told the police that she had thought the driver had lighter skin. *See* RT at 293. She later testified on redirect examination that she was certain of her schoolyard identification of Petitioner as the driver. RT at 301-02. Petitioner argues that, due to her statement about the perpetrator's skin tone at the in-person show-up,  Gatsos' identification was material, a reasonable likelihood of mistaken identification existed, and the trial court erred in denying

his motion for an in-person lineup.

### A.    Legal Standard

"A conviction which rests on a mistaken identification is a gross miscarriage of justice." *Stovall v. Denno*, 388 U.S. 293, 297 (1967). Procedures by which the defendant is identified as the perpetrator therefore must be examined to assess whether they are unduly suggestive. "It is the likelihood of misidentification which violates a defendant's right to due process." *Neil v. Biggers*, 409 U.S. 188, 198 (1972). Due process protects against the admission of evidence deriving from suggestive pretrial identification procedures. *See id.* at 196. Unnecessarily suggestive pretrial identification procedures alone do not require exclusion of in-court identification testimony, however; reliability is the linchpin in determining the admissibility of identification testimony. *See Manson v. Brathwaite,* 432 U.S. 98, 100-14 (1977). Identification testimony is inadmissible as a violation of due process only if (1) a pretrial encounter is so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification, and (2) the identification is not sufficiently reliable to outweigh the corrupting effects of the suggestive procedure. *See Van Pilon v. Reed*, 799 F.2d 1332, 1338 (9th Cir. 1986).

An identification procedure is impermissibly suggestive when it emphasizes the focus upon a single individual thereby increasing the likelihood of misidentification. *See United States v. Bagley,* 772 F.2d 482, 493 (9th Cir. 1985) (repeated showing of picture of individual impermissibly reinforces image of picture in mind of viewer); *see, e.g., United States v. Burdeau*, 168 F.3d 352, 357-58 (9th Cir. 1999) (finding that photo placement, hue and facial expression were insubstantial differences between defendant's photograph and the others in a photographic array and did not create an impermissible suggestion that defendant was the offender); *United States v. Montgomery*, 150 F.3d 983, 992-93 (9th Cir.

1998) (showing witness photographs of defendant, giving witness own copy of photograph of defendant and allowing witness to view defendant in courtroom day before witness testified found suggestive);  *Johnson v. Sublett*, 63 F.3d 926, 929 (9th Cir. 1995) (identification procedures not unnecessarily suggestive where witness failed to identify defendant from photo spread but later made positive identification at pretrial suppression hearing which defendant voluntarily attended).  Showing an eyewitness a surveillance photo of the actual criminal immediately prior to the photospread does not render the identification procedure impermissibly suggestive.  *United States v. Beck*, 393 F.3d 1088, 1092 (9th Cir. 2005).

In determining whether in-court identification testimony is sufficiently reliable, courts consider five factors: (1) the witness' opportunity to view the defendant at the time of the incident; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description; (4) the level of certainty demonstrated by the witness at the time of the identification procedure; and (5) the length of time between the incident and the identification.  *See Manson*, 432 U.S. at 114; *Biggers*, 409 U.S. at 199-200.  *See, e.g., United States v. Jones*, 84 F.3d 1206, 1209-10 (9th Cir.) (although drive-by identification by witnesses was suggestive, it was permissible because there was not a substantial likelihood of misidentification), *cert. denied*, 519 U.S. 973 (1996); *United States v. Wang*, 49 F.3d 502, 505 (9th Cir. 1995) (identification of defendant in photographs reliable where witness had ample opportunity to view defendant and actually spoke with him).

To prevail on habeas review, a petitioner must show that the identification procedures used in the case were "'so unnecessarily suggestive and conducive to irreparable mistaken identification that he was denied due process of law.'"  *Johnson*, 63 F.3d at 929 (quoting *Stovall*, 388 U.S. at 301-02) (finding no due

8

process violation where any possible prejudice defendant may suffer from unreliable identification mitigated by cross-examination and other courtroom safeguards). The bare fact that a confrontation was suggestive does not alone establish constitutional error. *Id.* (quoting *Biggers,* 409 U.S. at 196). The confrontation must be impermissibly or unduly suggestive under the totality of the circumstances. *Id.* The ultimate question of the constitutionality of pretrial identification procedures is a mixed question of law and fact. *See Van Pilon,* 799 F.2d at 1336; *Ponce v. Cupp*, 735 F.2d 333, 336 (9th Cir. 1984).

### B.     Analysis

Petitioner argues that the trial court erred in denying his motion for a pre-trial lineup identification procedure under *Evans v. Superior Court,* 11 Cal. 3d 617, 625 (1974), which holds that due process requires that a defendant's request for a lineup be granted only where eye witness identification is shown to be material and there is a reasonable likelihood of mistaken identification. In rejecting Petitioner's challenge, the Court of Appeal found that there was no reasonable likelihood of mistaken identification. The Court of Appeal distinguished *Evans* on the basis that the witnesses in *Evans* had committed themselves to their identifications at the preliminary hearings. Thus, they would be reluctant to recede even if they were mistaken. *Turner,* slip op. at 4. The Court of Appeal found that no such basis for mistaken identification existed in the instant case because Gatsos had not previously committed herself to an identification since she did not testify at the preliminary hearing. *Id*. Moreover, the Court of Appeal noted that "the right to a lineup arises . . . only when eyewitness identification is shown to be a material issue and there exists a reasonable likelihood of a mistaken identification which a lineup would tend to resolve." *Id.* at 4 (quoting *Evans,* 11 Cal. 3d at 625). Given that Gatsos had not committed herself to an identification, Fuentes, another witness, positively

identified Petitioner at the showup and at the preliminary hearing, and that Petitioner admitted that he drove the car, the Court of Appeal found that the evidence substantially supported the trial court's decision that Gatsos' identification was not material nor was there a reasonable likelihood of a mistaken identification. *Id.* at 5.

The decision of the Court of Appeal is not contrary to, or an unreasonable application of, federal law as established by the Supreme Court of the United States. The ultimate inquiry is whether, in light of the totality of the circumstances, the showup where Gatsos identified Petitioner is so "unnecessarily suggestive and conducive to irreparable mistaken identification that he was denied due process of law." *Johnson*, 63 F.3d at 929 (quoting *Stovall*, 388 U.S. at 301-02). Although the showup at the schoolyard focused only on Petitioner, the "bare fact that a confrontation was suggestive does not alone establish constitutional error." *Id.* (quoting *Biggers,* 409 U.S. at 196).

Here, the Court of Appeal's conclusion that there was no likelihood of mistaken identification is amply supported by the record. Gatsos identified Petitioner within one to two hours of observing the driver of the car, and she identified Petitioner at the schoolyard by looking at his profile, similar to the angle at which she had previously observed the driver of the car. In addition, both Gatsos and Fuentes separately identified Petitioner as the driver of the car at the schoolyard. Lastly, the risk that Gatsos would be reluctant to admit mistake is minimized since she did not commit herself to an identification at the preliminary hearing since she did not testify there.

However, the Court of Appeal acknowledged that Gatsos had identified Maurice Green, Petitioner's cousin, as looking similar to the driver of the car in a subsequent photo lineup conducted in her home a few weeks after the incident. The Court of Appeal recognized that this subsequent identification was a

10

"weakening of Gatsos' identification" because she identified someone other than Petitioner as looking similar to the driver of the car when she viewed the photospread.  However, the Court of Appeal determined that in light of the totality of the circumstances, there was no reasonable likelihood of mistaken identification because Gatsos' identification of Petitioner as the driver of the Firebird was supported by Fuentes' identification of Petitioner as the driver at the showup and preliminary hearing and Petitioner's admission that he was the driver of the Firebird.  *Turner,* slip op. at 5.

The Court of Appeal's analysis of Petitioner's claim under *Evans* comports with the analysis required by *Stovall* and *Biggers* because the Court of Appeal reviewed the record to determine if a reasonable likelihood of mistaken identification existed and reasonably determined that it had not.  *See Biggers,* 409 U.S. at 198 ("It is, first of all, apparent that the primary evil to be avoided is a very substantial likelihood of irreparable misidentification") (internal quotations omitted).  Thus, its decision is consistent with federal law and habeas relief is not warranted.

## II.   *In Camera* **Hearing Without Defense Counsel**

Petitioner contends that the trial court violated his Sixth Amendment right to counsel when it conducted an *in camera* hearing regarding the identity of a confidential informant, who provided information that Green was the "second responsible" for the burglary, without defense counsel.  *See Turner,* slip op. at 5. Respondent counters that Petitioner is procedurally barred from raising this claim because an adequate and independent state ground exists for the state court's denial of his claim, in that he failed to object at trial (invoking the contemporaneous objection rule as the state procedural rule barring federal review).

### A.   **Legal Standard**

11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

A federal court will not review questions of federal law decided by a state court if the decision also rests on a state law ground that is independent of the federal question and adequate to support the judgment. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991). In the context of direct review of a state court judgment, the independent and adequate state ground is jurisdictional. *Id.* at 729. In cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750.

Under the 'independent' prong, where the state decision fairly appears to rest primarily on federal law or be interwoven with it, and the state court did not clearly and expressly rely on an independent state law ground for denial, the state grounds is not "independent" and the federal court should reach the merits. *See Siripongs v. Calderon*, 35 F.3d 1308, 1316-18 (9th Cir. 1994) (petition summarily denied by state court "both for reasons of procedural default and on the merits"). On the other hand, where the state court decision rests on clearly alternate grounds, one invoking a state procedural bar and the other addressing the merits, the state procedural ground is still sufficiently independent to preclude habeas review. *See Bargas v. Burns*, 179 F.3d 1207, 1214 (9th Cir. 1999); *see also Moran v. McDaniel,* 80 F.3d 1261, 1269 (9th Cir. 1996) (concluding that Nevada Supreme Court rested its dismissal of petition on independent state procedural grounds because it stated that any discussion of merits was strictly for purpose of demonstrating that petitioner's procedural defaults could not be overcome by showing of cause and prejudice).

Under the 'adequate' prong, the state procedural bar cited must be "clear,

12

consistently applied, and well-established at the time of the petitioner's purported default." *Calderon v. United States Dist. Court (Bean)*, 96 F.3d 1126, 1129 (9th Cir. 1996) (internal quotations and citation omitted), *cert. denied*, 520 U.S. 1204 (1997).  The federal court must look at the actual practice of state courts in enforcing their procedural bars, and not just at the rule as stated in state court decisions.  *Powell v. Lambert*, 357 F.3d 871, 879 (9th Cir. 2004).  In examining the rule in practice, the federal court may consider both published and unpublished state court decisions.  *Id.*  The state bears the burden of proving the "adequacy" of a state procedural bar.  *Bennett v. Mueller*, 322 F.3d 573, 585-86 (9th Cir. 2003), *cert. denied*, 540 U.S. 938 (2003).

### B.      Analysis

The Court of Appeal initially noted that neither Petitioner nor defense counsel objected when the trial court stated in open court that it was going to hold an *in camera* hearing.  *Turner,* slip op. at 6.  The Court of Appeal concluded that Petitioner was procedurally barred from challenging the exclusion of the defense from that hearing.  *Id.* (citing *People v. Baines,* 30 Cal. 3d 143, 149 (1981)).  However the Court of Appeal also considered and rejected Petitioner's claim on the merits, explaining that "the trial court was not obligated sua sponte to offer appellant and/or his counsel an opportunity to be present at the in camera hearing."  *Turner,* slip op. at 6.  Relying on California Evidence Code section 1042 subdivision (d), the Court of Appeal reiterated that where a defendant demands disclosure of a confidential informant on the ground that the informant is a material witness on the issue of guilt, an *in camera* hearing must be conducted outside the presence of the defendant and his counsel if the prosecution so requests.  *Id.*  The Court of Appeal further noted that "the use of an in camera hearing in this case does not implicate appellant's federal or state constitutional rights 'to be present and have effective aid of counsel.'"  *Id.*

13

(quoting *People v. Levine,* 152 Cal. App. 3d. 1058, 1068 (1984)).

Because the Court of Appeal rested its decision on alternate grounds, one invoking a state procedural bar and the other addressing the merits, the state procedural ground can still preclude habeas review. *See Bargas*, 179 F.3d at 1214; *see also Moran,* 80 F.3d at 1269.

The Ninth Circuit has previously held in *Melendez v. Pliler*, a case cited by Respondent, that the contemporaneous objection rule is an independent state ground for a procedural bar. *See* 288 F.3d 1120, 1125 (9th Cir. 2002) (the "contemporaneous objection rule" is California Evidence Code section 353). Moreover, in *Melendez*, the Ninth Circuit held that the contemporaneous objection rule was consistently applied. *Id.* ("We held more than twenty years ago that the rule is consistently applied when a party has failed to make *any* objection to the admission of evidence.") Also cited by Respondent is *Vansickel v. White,* 166 F.3d 953, 957-58 (9th Cir. 1999), in which the Ninth Circuit found that petitioner had procedurally defaulted when his counsel failed to contemporaneously object at trial. Thus, this Court finds that this claim is procedurally barred from federal review, unless Petitioner demonstrates cause for the default and prejudice.

### 1.   *Cause*

The existence of cause for a procedural default "must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488 (1986). Ineffective assistance of counsel is cause for procedural default, but "[a]ttorney error short of ineffective assistance of counsel does not constitute cause." *Id.* at 492. Petitioner does not allege ineffective assistance of counsel, or any other basis, as a factor that impeded his counsel's efforts to comply with California's procedural bar. Attorney ignorance or

14

inadvertence is not "cause." *Coleman,* 501 U.S. at 753. Therefore, this Court finds that Petitioner has failed to demonstrate cause for the procedural default.

2.      *Prejudice*

Although this Court need not address the issue of prejudice since Petitioner has not demonstrated cause, this Court will nevertheless address the issue. Petitioner argues that he was prejudiced by the appellate court's refusal to allow his appellate counsel to view the transcript of the *in camera* hearing because his appellate counsel needed to see the sealed transcript in order to effectively represent Petitioner. Traverse at 16. In order to establish prejudice, a habeas petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Vansickel,* 166 F.3d at 958-59 (holding that the prejudice standard in *Strickland v. Washington*, 466 U.S. 668 (1984) is the standard for prejudice standard in procedural bar cases) (internal citations omitted).

Here, Petitioner has not demonstrated that had trial counsel objected to the *in camera* hearing, the result of the proceedings would have been different. The trial court determined that there was "no reasonable probability that nondisclosure would deprive [Petitioner] of a fair trial." RT 47. Moreover, that appellate counsel was precluded from reviewing the transcript of the *in camera* hearing does not demonstrate how trial counsel's failure to object created a less favorable result. As such, Petitioner has not shown a reasonable probability that the outcome of the proceedings would have been different.

In addition, Petitioner has not alleged or demonstrated that failure to consider this claim on the merits will result in a fundamental miscarriage of justice. *See Coleman*, 501 U.S. at 750. In sum, this Court is barred from

15

reviewing Petitioner's claim that trial court violated his Sixth Amendment right to counsel when it held the *in camera* hearing outside the presence of defense counsel.

### III.   Sufficiency of the Evidence of Evasion of a Peace Officer

Petitioner next asserts that insufficient evidence supports his conviction for evading a peace officer because there was no evidence that Officer Valliere was appointed by the chief of police.

#### A.   Legal Standard

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970).  A federal court reviewing collaterally a state court conviction does not determine whether it is satisfied that the evidence established guilt beyond a reasonable doubt.  *Payne v. Borg*, 982 F.2d 335, 338 (9th Cir. 1992), *cert. denied*, 510 US 843 (1993).  The federal court "determines only whether, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Jackson v. Virginia,* 443 U.S. 307, 319 (1979)*; Payne*, 982 F.2d at 338.  Only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt, may the writ be granted.  *See Jackson*, 443 U.S. at 324; *Payne*, 982 F.2d at 338; *Miller v. Stagner*, 757 F.2d 988, 992-93 (9th Cir.), *amended*, 768 F.2d 1090 (9th Cir. 1985), *cert. denied*, 475 U.S. 1048, *and cert. denied*, 475 U.S. 1049 (1986); *Bashor v. Risley*, 730 F.2d 1228, 1239 (9th Cir.), *cert. denied*, 469 U.S. 838 (1984).

If confronted by a record that supports conflicting inferences, a federal habeas court "must presume – even if it does not affirmatively appear on the record – that the trier of fact resolved any such conflicts in favor of the

prosecution, and must defer to that resolution." *Jackson*, 443 U.S. at 326.  The prosecution need not affirmatively rule out every hypothesis except that of guilt. *Wright v. West*, 505 U.S. 277, 296-97 (1992) (quoting *Jackson*, 443 U.S. at 326); *see, e.g., Davis v. Woodford*, 384 F.3d 628, 639-41 (9th Cir. 2004) (finding sufficient evidence of premeditation).  The existence of some small doubt based on an unsupported yet unrebutted hypothesis of innocence therefore is not sufficient to invalidate an otherwise legitimate conviction.  *See Taylor v. Stainer*, 31 F.3d 907, 910 (9th Cir. 1994) (three hypotheses regarding petitioner's fingerprints which government failed to rebut unsupported by evidence and therefore insufficient to invalidate conviction). After AEDPA, a federal habeas court applies the standards of *Jackson* with an additional layer of deference. *Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005).  Generally, a federal habeas court must ask whether the operative state court decision reflected an unreasonable application of *Jackson* and *Winship* to the facts of the case.  *Id.*  at 1275 (quoting 28 U.S.C. § 2254(d)).

## B.        Analysis

Petitioner contends that insufficient evidence supports his conviction for evading a peace officer because the Prosecution did not present evidence that Officer Valliere was appointed by the chief of police.  The Court of Appeal rejected Petitioner's argument based on its decision in *People v. Lara,* 30 Cal. App. 4th 658, 668-69 (1994) and the California Supreme Court's decision in *People v. Flood,* 18 Cal. 4th 470, 490-91 n. 13 (1998), which held that evidence demonstrating that an officer is employed by the city as a police officer is sufficient to establish that he is a peace officer within in the meaning of Penal Code section 830.1.[1]  The Court of Appeal noted that it was undisputed that

_____

[1]

Penal Code Section 830.1(a) states, in pertinent part: "any police officer, employed in that

Officer Valliere was employed by the city of Antioch as a police officer.  Thus, the Court of Appeal concluded that Petitioner's claim failed because Officer Valliere was a peace officer within the meaning of Penal Code section 830.1.

The decision of the Court of Appeal is not contrary to, or an unreasonable application of, federal law as established in *Jackson*.  The record indicates that Officer Valliere testified that he was employed by the City of Antioch as a police officer for a year and two months, and on the day of the incident, he was on patrol.  Reporter's Transcript ("RT"), 354, 356.  Petitioner presented no evidence to the contrary.  Indeed, Petitioner concedes that "at the time of the events, Officer Valliere was a police officer for the (c)ity of Antioch and had been so employed for about 9-10 months."  Traverse at 17.  Given these facts, the Court of Appeal found that Petitioner had not demonstrated that no reasonable trier of a fact could infer that Officer Valliere was a peace officer within the meaning of Penal Code section 830.1.  This Court concludes that the Court of Appeal's decision is not an unreasonable application of the *Jackson* standard.

**IV.     Right to Counsel for New Trial Motion**

After the jury verdict, Petitioner moved under *People v. Marsden,* 2 Cal.3d 118 (1970), for the trial court to appoint new counsel to continue with Petitioner's post-verdict proceedings.  RT 706.  After considering Petitioner's argument for substitution of counsel, the trial court appointed independent counsel from the Alternate Defender's Office ("ADO") for the limited purpose of investigating whether there was a basis for a new trial motion.  RT 704-05.  However, the trial court denied the *Marsden* motion for all other purposes, continuing trial counsel's representation for the remaining post-conviction proceedings.  RT 717-18.  At a later proceeding, the trial court relieved the ADO

capacity and appointed by the chief of police or chief, director, or chief executive of a public safety agency, of a city . . . is a peace officer."

18

after hearing argument from its attorney that the appointment was inappropriate under *People v. Smith*, 6 Cal. 4th 684, 693-95 (1993), which held that appointment of counsel for the purpose of arguing that previous counsel was incompetent is inappropriate based on the "undesirable consequence[]" of having a series of attorneys claim that the previous one was incompetent, and that new counsel should only be appointed upon a proper showing by defendant that adequate grounds exist to substitute counsel.   RT 728-30.

Notwithstanding its prior denial of the *Marsden* motion, the trial court agreed to hold another *Marsden* hearing.  RT 754-76 (sealed).  After hearing further argument from Petitioner, the trial court denied his motion for new counsel, finding that no grounds existed to warrant substitution of counsel.  *See* RT 748-49, 776.  Petitioner asserts that the trial court violated his right to counsel when it revoked its appointment of independent counsel for the limited purpose of investigating the possibility of a new trial motion.

### A.      Legal Standard

The denial of an indigent criminal defendant's motion for substitution of counsel may violate his Sixth Amendment right to counsel.  *See Daniels v. Woodford*, 428 F.3d 1181, 1197-98 (9th Cir. 2005) (noting that test for determining whether court should have granted substitution motion is same as test for determining whether an irreconcilable conflict existed); *see, e.g., United States v. Moore*, 159 F.3d 1154, 1160 (9th Cir. 1998) (where irreconcilable conflict existed between defendant and counsel trial court's failure to appoint substitute counsel was reversible error); *Crandell v. Bunnell*, 144 F.3d 1213, 1215-18 (9th Cir. 1998) (denial of substitute counsel violated Sixth Amendment where appointed counsel failed for months to investigate case and to develop relationship with defendant), *overruled on other grounds by Schell v. Witek*, 218 F.3d 1017 (9th Cir. 2000) (en banc).  However, a criminal defendant who cannot

19

afford to retain counsel has no right to counsel of his own choosing. *Wheat v. United States*, 486 U.S. 153, 159 (1988). Nor is he entitled to an attorney who likes and feels comfortable with him. *United States v. Schaff*, 948 F.2d 501, 505 (9th Cir. 1991). The Sixth Amendment guarantees effective assistance of counsel, not a "meaningful relationship" between an accused and his counsel. *Morris v. Slappy*, 461 U.S. 1, 14 (1983).

The denial of a motion to substitute counsel implicates a defendant's Sixth Amendment right to counsel and is properly considered in federal habeas. *Bland v. California Dep't of Corrections,* 20 F.3d 1469, 1475 (9th Cir. 1994), *overruled on other grounds by Schell*, 218 F.3d at 1023. The Ninth Circuit has held that when a defendant voices a seemingly substantial complaint about counsel, the trial judge should make a thorough inquiry into the reasons for the defendant's dissatisfaction. *Id.* at 1475-76; *United States v. Robinson*, 913 F.2d 712, 716 (9th Cir. 1990); *Hudson v. Rushen*, 686 F.2d 826, 829 (9th Cir. 1982).[2] The inquiry need only be as comprehensive as the circumstances reasonably would permit, however. *King v. Rowland*, 977 F.2d 1354, 1357 (9th Cir. 1992) (record may demonstrate that extensive inquiry was not necessary). The habeas court considers whether the trial court's denial of or failure to rule on the motion "actually violated [petitioner's] constitutional rights in that the conflict between [petitioner] and his attorney had become so great that it resulted in a total lack of communication or other significant impediment that resulted in turn in an attorney-client relationship that fell short of that required by the Sixth Amendment." *Schell*, 218 F.3d at 1026.

---

[2]*People v. Marsden*, 2 Cal. 3d 118 (1970), requires the trial court to permit a criminal defendant requesting substitution of counsel to specify the reasons for his request and generally to hold a hearing. This California rule substantially parallels the one prescribed by the Ninth Circuit in *Hudson v. Rushen*. *See Chavez v. Pulley*, 623 F. Supp. 672, 687 n.8 (E.D. Cal. 1985).

**B.** **Analysis**

The trial court did not violate Petitioner's right to counsel when it denied his *Marsden* motion.  Consistent with *Bland,* the trial court thoroughly investigated Petitioner's dissatisfaction with his trial counsel.  After hearing argument by Petitioner, the trial court assigned independent counsel to investigate whether there were grounds for a new trial motion based on ineffective assistance of counsel.  The trial court denied the *Marsden* motion for all other purposes, thus Petitioner continued to be represented by counsel during that time.  Subsequently, the trial court relieved the ADO only after it determined that its appointment was inappropriate under *People v. Smith,* 6 Cal. 4th 684 (1993).

Even after it ruled that Petitioner was not entitled to new court-appointed counsel, the trial court held another *Marsden* hearing when Petitioner submitted another such motion.  That motion was denied because Petitioner did not make an adequate showing that his trial counsel was incompetent.  Petitioner's sole basis for requesting new counsel rested upon his dissatisfaction with his trial counsel's trial tactics.  RT 710.  Petitioner cited no other evidence to demonstrate that his relationship with his trial counsel had so deteriorated such that "it resulted in a total lack of communication or other significant impediment that resulted in turn in an attorney-client relationship that fell short of that required by the Sixth Amendment."  *Schell*, 218 F.3d at 1026.  Disagreement between a defendant and his trial attorney over trial strategies does not warrant substitution of counsel.  *Id.* at 1026 n.8 (quoting *Brookhart v. Janis,* 384 U.S. 1, 8 (1966) ("[A] lawyer may properly make a tactical determination of how to run a trial even in the face of his client's incomprehension or explicit disapproval")).

Additionally, as noted by the Court of Appeal, Petitioner's argument that he was not represented by counsel at the hearing where the trial court revoked

21

appointment of the ADO is without merit.  *Turner,* slip. op at 9 n.4 (citing *People v. Hines,* 15 Cal. 4th 997, 1024-25 (1997) (a defendant does not have a constitutional right to a second *separate* counsel at a *Marsden* hearing).  The trial court had appointed counsel solely for investigation of whether a new trial motion was in order; Petitioner was represented by his original trial counsel for all other purposes.  When it became clear that appointment of the ADO was inappropriate, the trial court properly relieved the Alternate Defender of its limited representation on that issue.  RT 730.  Subsequently, the trial court denied Petitioner's new trial motion based on ineffective assistance of counsel and insufficiency of evidence because it found that it lacked merit.  *See* RT 748, 751, 754-76 (sealed), 779.

Petitioner cites no legal authority to support his claim that he was "unrepresented" at the *Marsden* hearing because the trial court revoked appointment of the ADO.  *See e.g.,* Pet. at 49-54; Traverse at 26.  The record indicates that the trial court made a comprehensive inquiry into Petitioner's concerns with his trial counsel, and after such inquiry, properly denied his motion.  Although the record shows that Petitioner was dissatisfied with his counsel's trial tactics, this alone is not sufficient to demonstrate that his Sixth Amendment right to counsel had been violated.  *See Schell,* 218 F.3d at 1026 n.8.  Moreover, the record indicates that Petitioner *was* represented by his original trial counsel at the hearing where the trial court relieved the ADO of its duty to investigate the possibility of a new trial motion.  *See* RT 714-18, 750-51, 778-79.  Thus, Petitioner's claim fails.

**V.      Voluntariness of Waiver of Jury on Prior Conviction Allegations**

Petitioner contends that he did not knowingly and voluntarily waive his right to a jury trial on the prior conviction allegations (hereinafter referred to as "priors").  Specifically, he argues that he conditioned his waiver of a jury trial on

22

the priors on obtaining new counsel for the purpose of filing a motion for a new trial. Pet. at 63. He argues that since the trial court subsequently relieved the ADO without the filing of a new trial motion, Petitioner's waiver was invalid because he asserts that had he "known that [obtaining new counsel for a new trial motion] wasn't going to happen, he would have proceeded with the jury trial of the priors." *Id*. This argument also fails.

### A.   Legal Standard

There is no federal constitutional right to a jury trial on sentencing issues. *See Walton v. Arizona*, 497 U.S. 639, 648-49 (1990); *Spaziano v. Florida*, 468 U.S. 447, 457-465 (1984); *United States v. Kinsey*, 843 F.2d 383, 391 (9th Cir.), *cert. denied,* 487 U.S. 1223 (1988). Nor is there a federal constitutional right to a jury trial on the fact of a prior conviction. *See Apprendi v. New Jersey*, 530 U.S. 466, 488-90 (2000); *United States v. Zepeda*, 234 F. 3d 411, 414-15 (9th Cir. 2001), *cert. denied*, 532 U.S. 966 (2001).

While there is no right under the Sixth Amendment to have a jury hear and rule on a sentencing enhancement allegations based on a prior conviction, *see Apprendi*, 530 U.S. at 475-76, the deprivation of a statutory entitlement to a jury trial implicates the federal Due Process Clause. *See Hicks v. Oklahoma*, 447 U.S. 343, 346 (1980); *People v. Odle*, 45 Cal. 3d 386, 412 (1988), *cert. denied*, 488 U.S. 917 (1988). The defendant in such a case has a substantial and legitimate expectation that he will be deprived of his liberty only to the extent determined by the jury in the exercise of its statutory discretion, and that liberty interest is one that the Fourteenth Amendment preserves against arbitrary deprivation by the state. *See Hicks,* 447 U.S. at 346 (citing *Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1 (1979); *Vitek v. Jones*, 445 U.S. 480 (1979); *Wolff v. McDonnell*, 418 U.S. 539 (1974); *Morrissey v. Brewer*, 408 U.S. 471 (1972)).

If a federal habeas court finds constitutional error, the appropriate standard

23

for reviewing such violations may be whether the error had a substantial and injurious effect or influence resulting in actual prejudice under *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); s*ee Dillard v. Roe*, 244 F.3d 758, 770 (9th Cir. 2001) (holding that California trial court's alleged error in removing from jury question of authenticity of records submitted to establish two prior felony convictions did not merit habeas relief because the error, if any, did not have a substantial and injurious effect in determining the jury's verdict; there was an abundance of other, uncontradicted evidence that petitioner had suffered the convictions alleged).

### B.      Analysis

The Court of Appeal found that Petitioner voluntarily waived a jury trial on the priors and that he did not condition his waiver on the appointment or retention of new counsel. *Turner,* slip op. at 10.  In reviewing the entire record, the Court of Appeal made the following determination:

> Appellant agreed with his counsel's statement that appellant wanted to "waive jury, *you won't ever have a jury trial on the priors, but you don't want to have that trial in front of the judge today, you want to see if you can have another lawyer do that trial.*" (Italics added.) . . .  Our review of the entire record, including the sealed *Marsden* hearings, supports the trial court's finding that appellant's waiver of his right to a jury trial on the prior conviction allegations was not conditioned on the actual appointment of new counsel to represent him during that proceeding.

*Turner,* slip op. at 8.

Because the Court of Appeal made a factual determination that Petitioner voluntarily waived his right to a jury trial on the priors, this claim is governed by 28 U.S.C. § 2254(d)(2). Under § 2254(d)(2), the central inquiry is whether an appellate panel applying the normal standards of appellate review, could reasonably conclude that the state court findings are supported by the record.

24

*Lambert,* 393 F.3d at 978.[3]  This Court finds that the Court of Appeal reasonably concluded that the trial court's finding that Petitioner knowingly and voluntarily waived his jury trial on the prior conviction allegations is supported by the record.

The record reflects that on July 30, 1999, Petitioner indicated to the trial court that he wished to waive a jury trial on the priors and to obtain a continuance in order to retain new counsel to file a new trial motion and conduct the trial on the priors.  RT 691-93.  The court granted Petitioner's request for continuance and the prosecutor conducted a voir dire of Petitioner regarding his waiver of a jury trial on the priors.  The following colloquy occurred:

> Q: Okay.  You have a right to a jury trial on the truth of your prior convictions that are alleged in this Information, which is the charging document in the case.  It is my understanding that you wish to waive your right to a jury trial on those prior convictions and have the Court decide the truth of those prior convictions, albeit at later date, and in which you and -- between the two times you wish to attempt to obtain new counsel?
> A: Yes.
> Q: Is that -- that is my understanding, correct?
> A: That is my only reason.
> Q: Okay.  Do you in fact waive your right to a jury trial on the issue of enhancements for the prior convictions that are shown in the Information under Penal Code Sections 1170.1, 2, 667(a), and 667.5(b)?
> A. Yes, I -- I waive the jury.  Like I said -- stated before, only for the reason for a new counsel on my priors and mistrial.  That is the only reason why I am waiving this jury.  I understand it.

RT 693-94.

About three weeks later, on August 23, 1999, the parties reconvened to determine whether Petitioner or his family had retained new counsel.  RT 704.

---

[3]

Respondent's assertion that this claim is governed by 28 U.S.C. § 2254(e)(1) is incorrect. Section 2254(e)(1) applies to challenges based on extrinsic evidence, or evidence presented for the first time in federal court.  *Taylor v. Maddox,* 366 F.3d 992, 999-1000 (9th Cir. 2004).  Here, Petitioner asserts his claim based only on evidence in the record.  Thus, § 2254(d)(2) is the appropriate standard of review because § 2254(d)(2) applies to intrinsic review of state court's process, or situations in which the petitioner challenges the state court's findings based entirely on the state court record.  *Id.*

25

Petitioner replied that he was not able to obtain new counsel.  RT 704.  At that point, Petitioner filed his first *Marsden* motion and the trial court decided to appoint independent counsel, the ADO, to investigate whether a new trial motion based on ineffective assistance of counsel was warranted.  RT 705.  The trial court explained to Petitioner that it would address Petitioner's concerns in the *Marsden* motion by appointing independent counsel.  RT 706.  On August 30, 1999, the trial court appointed the ADO to investigate the possibility of a new trial motion, RT 714, and later revoked its appointment of the ADO on November 5, 1999 when it determined that the ADO's appointment was improper.  RT 724.

Under § 2254(d)(2), this Court must determine whether the Court of Appeal reasonably concluded that the trial court's finding that Petitioner unconditionally waived a jury trial on the priors is supported by the record.  This Court finds that the record supports that court's conclusion. First, Petitioner waived his jury trial on the priors before the trial court announced that it would appoint the ADO to investigate the possibility of a new trial motion.  Thus, Petitioner could not have reasonably believed that he conditioned his waiver of jury trial on obtaining that counsel since the trial court had not yet indicated that it would appoint new counsel and Petitioner had not yet filed his *Marsden* motion.  Indeed, it was only after Petitioner failed to retain new counsel, three weeks *after* the hearing in which Petitioner waived jury trial on the priors, that the trial court decided to appoint the ADO.

Second, the trial court explicitly asked Petitioner whether he wanted to waive jury trial on the priors and Petitioner reiterated that he was waiving jury trial on the priors so that he could seek new counsel.  *See* RT 692. The trial court replied that Petitioner could waive jury trial for whatever reason he wanted, whereupon Petitioner stated again that he was waiving a jury trial on the priors.  Thus, the record demonstrates that Petitioner knowingly and voluntarily waived

jury trial on the priors without conditioning the waiver on actual appointment of new counsel.

To the extent that any ambiguity may exist in the record concerning the voluntariness of Petitioner's waiver of jury trial, this Court cannot say that the Court of Appeal's determination that Petitioner's jury waiver on the priors was voluntary is an unreasonable conclusion from the record.

Moreover, even assuming that the trial court erred in holding a bench trial, the error did not have "a substantial and injurious effect or influence resulting in actual prejudice." *Brecht*, 507 U.S. at 637.  The Court of Appeal noted that "[a]ppellant has made no showing that it is reasonably probable that a result more favorable to him would have been reached . . . if the jury, instead of the court, had determined that he had suffered (citation) the prior convictions." *Turner,* slip op. at 10 (internal quotations omitted).

This Court concurs with the Court of Appeal.  The record reveals that the trial court found Petitioner's prior convictions true based on certified copies of the prior convictions and Petitioner offered no evidence to the contrary.  RT 781-83.  In light of this evidence, Petitioner has not shown that having a judge decide the truth of the priors, instead of a jury, "had a substantial and injurious effect or influence resulting in actual prejudice." *Brecht*, 507 U.S. at 637.  Thus, Petitioner's claim fails.

**VI.    Concurrent Sentence**

Petitioner contends that the trial court improperly changed its mind when it imposed a concurrent sentence for the conviction for evading a peace officer rather than imposing a stay of that sentence, as initially considered.  Thus, Petitioner argues, the trial court committed a sentencing error, violating his state and federal due process rights as well as the Double Jeopardy Clause of the Fifth

Amendment.[4]  Pet. at 71.  Respondent maintains that this claim is procedurally barred by the state court's determination that the argument was forfeited when Petitioner failed to object at the time the sentence was rendered.

### A.    Legal Standard

State sentencing courts must be accorded wide latitude in their decisions as to punishment.  *See Walker v. Endell*, 850 F.2d 470, 476 (9th Cir. 1987), *cert. denied,* 488 U.S. 926, *and cert. denied*, 488 U.S. 981 (1988).  Generally, a federal court may not review a state sentence that is within statutory limits.  *See id.* However, there are exceptions under the Due Process Clause and the Eighth Amendment.  The constitutional guarantee of due process is fully applicable at sentencing.  *See Gardner v. Florida*, 430 U.S. 349, 358 (1977).  Federal courts must defer to the state court's interpretation of state sentencing laws.  *See Bueno v. Hallahan,* 988 F.2d 86, 88 (9th Cir. 1993).  "Absent a showing of fundamental unfairness, a state court's misapplication of its own sentencing laws does not justify federal habeas relief."  *Christian v. Rhode*, 41 F.3d 461, 469 (9th Cir. 1994); *see, e.g., Miller v. Vasquez*, 868 F.2d 1116, 1118-19 (9th Cir. 1989) (whether assault with deadly weapon qualifies as "serious felony" under California's sentence enhancement provisions, Cal. Penal Code §§ 667(a) and 1192.7(c)(23), is a question of state sentencing law and does not state a constitutional claim).

The Double Jeopardy Clause of the Fifth Amendment serves to prevent both successive punishment and successive prosecution.  *See Garrett v. United*

---

[4]

This Court notes that Petitioner does not argue that a concurrent sentence for the evading a peace officer conviction was *itself* improper, or that the sentence should have been stayed pursuant to Penal code section 654.  Instead, Petitioner argues that the trial court changed the sentence on an *improper basis*: because the Prosecutor suggested that the sentence should run concurrent instead of being stayed.  Pet. at 69-71; Traverse at 33-34.

*States*, 471 U.S. 773, 793 (1985); *Ohio v. Johnson*, 467 U.S. 493, 499 (1984); *Brown v. Ohio*, 432 U.S. 161, 165 (1977); *Witte v. United States,* 515 U.S. 389, 396 (9th Cir. 1995).[5]   The Double Jeopardy Clause is not violated if "each [offense] requires proof of a fact which the other does not."  *Blockburger v. United States*, 284 U.S. 299, 304 (1932) ; see, e.g., *United States v. Garlick*, 240 F.3d 789, 793-94 (9th Cir. 2001) (two counts of wire fraud based on two fax transmissions not multiplicitous, even though only first fax was sent by defendant and first fax could have been used to prove defendant caused second fax to be sent).

The *Blockburger* test does not necessarily control the inquiry into the intent of a state legislature, however.  Even if the crimes are the same under *Blockburger*, if it is evident that Congress or a state legislature intended to authorize cumulative punishments, a federal court's inquiry is at an end.  *See Johnson*, 467 U.S. at 499 n.8; *Hunter*, 459 U.S. at 369; *United States v. Martinez,* 49 F.3d 1398, 1402 n.6 (9th Cir. 1995), *cert. denied*, 516 U.S. 1065 (1996); *accord United States v. Wolfswinkel*, 44 F.3d 782, 784 (9th Cir. 1995) ("If Congress enacts statutes that indicate an intent to impose separate punishments, those statutes define separate offenses, and the punishments do not violate the Constitution.") (citing *Albernaz v. United States*, 450 U.S. 333, 344 (1981)).

### B.      Analysis

The Court of Appeal correctly noted that Petitioner had not asserted that the sentence for evading a police officer should have been stayed under Penal Code section 654.  Rather, Petitioner challenges the sentence as procedurally

---

[5]

If the alleged second punishment is for a different offense, the court need not inquire into whether there have been multiple punishments.  *See Noriega-Perez v. United States*, 179 F.3d at 1171 (declining to inquire whether INS penalty is civil or criminal because penalty was assessed for separate offense from prior criminal conviction).

flawed because the trial court changed its initial determination to impose a stay on an improper basis: the prosecutor's argument that the sentence should run concurrent to the burglary sentence.  The Court of Appeal concluded that because neither Petitioner nor his counsel objected to the imposition of concurrent sentences, Petitioner's claim was procedurally barred.  However, the Court of Appeal went on to reject Petitioner's argument on the merits stating, "at the time the court changed its mind, it had the 'jurisdiction and authority to amend or modify its previous' statement regarding the staying of the sentence on the conviction for evading a peace officer while driving recklessly." *Turner,* slip op. at 11.  Furthermore, the Court of Appeal noted that Petitioner's claim that the court's change of mind resulted in an increased or harsher sentence was without merit.

### 1. *Procedural Bar*

As discussed above, a federal court will not review questions of federal law decided by a state court if the decision also rests on a state law ground that is independent of the federal question and adequate to support the judgment. *Coleman*, 501 U.S. at 729-30.  The state bears the burden of proving that the grounds for the state procedural bar is clear and consistently applied.  *See Mueller*, 322 F.3d at 585-86.  As the Ninth Circuit has noted, it is most just to place the burden of establishing such a default with Respondent, as it is "the state, not petitioner, often appearing *pro se*, who has at its hands the records and authorities to prove whether its courts have regularly and consistently applied the procedural bar." *Id.* at 585.

With regard to Respondent's arguments that the state court's decision rests on adequate and independent state grounds precluding federal review, this Court finds that Respondent has failed to meet its burden under *Bennett v. Mueller* of establishing the adequacy of the procedural bar, specifically that it was

consistently applied and well- established at the time of the alleged default. *See Bean*, 96 F.3d at 1129.  As such, because Respondent has not established that federal review is barred by the existence of an adequate and independent state ground for the state court's decision, this Court has reviewed Petitioner's claim on the merits.

Petitioner's claim fails because he has not established that the trial court's conduct at sentencing violated his due process rights.  The crux of Petitioner's claim is that the trial court committed a sentencing error when it imposed the sentence for evading a peace officer concurrent to the sentence for burglary, rather than staying the sentence.  As such, unless Petitioner can show "fundamental unfairness" resulting from the alleged sentencing error, federal habeas relief is not warranted on the basis of the state court's misapplication of its sentencing laws.  *See Christian*, 41 F.3d at 469; *Miller*, 868 F.2d at 1118-19.

This Court finds no such fundamental unfairness in violation of Petitioner's due process rights.  The trial judge announced at the beginning of sentencing that he believed that the sentence for the conviction for evading a peace officer was stayed under Penal Code section 654, but even if it were not, he would run the sentence concurrent.  RT 812-13.  Petitioner claims that this sentencing error resulted in an increased sentence, but does not support this contention.  Pursuant to the California Three Strikes Law, Penal Code section 667(2)(A), Petitioner was sentenced to 25 years to life for the burglary conviction.  RT 812.  Petitioner has not shown how running the sentence for evading a peace officer concurrent to the sentence for burglary increased his sentence in any way.  Therefore,  Petitioner has not established a due process violation in the trial court's actions at sentencing.  Thus, Petitioner's claim fails on the merits.

2. *Double Jeopardy*

31

Petitioner further contends that the trial court violated the Double Jeopardy Clause of the Fifth Amendment by imposing a concurrent sentence for the evading a peace officer conviction.  The Supreme Court of the United States has held that the test to determine whether there are two offenses for Double Jeopardy purposes, is whether each offense requires proof of an additional fact which the other does not.  *Witte,* 515 U.S. at 396 (quoting *Blockburger,* 284 U.S. at 304).  In *Blockburger,* the defendant was convicted of violating two sections of the Anti-Narcotic Act, 26 U.S.C. §§ 692 and 696, which prohibited the sale of certain enumerated drugs, and the sale of any of those drugs "not in pursuance of a written order of the person to whom the drug is sold."  284 U.S. at 304.  The Supreme Court upheld both convictions and *punishment* for each offense even though defendant made one sale that gave rise to both offenses because each offense required proof of a different element.  *See id.* at 304-05.

In the case at bar, Petitioner suffered separate convictions for burglary (Cal. Penal Code § 459) and evading a peace officer (Cal. Veh. Code § 2800.2), which obviously include proof of very different facts.[6]  To be convicted of burglary, proof that the accused entered a house (or building) with an intent to commit a felony is required.  *See* § 459; *People v. Carter,* 36 Cal. 4th 1114, 1144

---

[6]

California Penal Code section 459 provides, in pertinent part, that "every person who enters any house, room, apartment, tenement, shop, warehouse, store, mill, barn, stable, outhouse or other building, . . . with intent to commit grand or petit larceny or any felony is guilty of burglary.

California Vehicle Code section 2800.2 provides, in pertinent part, that "(a) If a person flees or attempts to elude a pursuing peace officer in violation of Section 2800.1 and the pursued vehicle is driven in a willful or wanton disregard for the safety of persons or property, the person driving the vehicle, upon conviction, shall be punished by imprisonment in the state prison, or by confinement in the county jail for not less than six months nor more than one year. The court may also impose a fine of not less than one thousand dollars ($1,000) nor more than ten thousand dollars ($10,000), or may impose both that imprisonment or confinement and fine.

(2005) ("Penal Code section 459, then and now, requires entry with intent to commit '*grand or petit larceny* or any *felony*'") (emphasis in original). Obviously, a person can commit either of these offenses without committing the other.  Accordingly, under *Blockburger,* Petitioner's convictions for burglary and evading a peace officer while driving recklessly are two separate offenses for which Petitioner can be separately punished.  Thus, no violation of the Double Jeopardy Clause occurred.

### VII.   Jury Instruction on Reasonable Doubt

Petitioner argues that the trial court's use of the phrase "abiding conviction" in explaining "reasonable doubt" in its jury instruction violated his process rights because it did not adequately describe the quantum of doubt required for acquittal.[7]  However, the Ninth Circuit has previously rejected this identical argument in *Lisenbee v. Henry,* 166 F.3d 997, 1000 (9th Cir. 1999). Therefore, Petitioner's claim fails.

### VIII.  Failure to Provide Transcript of *In Camera* Hearing

Six days after the burglary, the police received information from a confidential informant that Maurice Green, Petitioner's cousin, was the "second responsible [for] the burglary" and that Green had an outstanding "nobail warrant" for his arrest.  *Turner,* slip op. at 5.  Petitioner's trial counsel argued that since the confidential informant had knowledge of the burglary, he or she may have information beneficial to Petitioner's defense.  RT 27.  The trial court found that Petitioner had made a showing that disclosure might be relevant to his

---

[7]

 The trial judge instructed the jury on "reasonable doubt" as follows: "Reasonable doubt is defined as follows: It is not a mere possible doubt, because everything relating to human affairs is open to some possible and imaginary doubt.  It is that a state of the case which after entire comparison and consideration of all of the evidence leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction of the truth of the charge."  RT 570.

defense and held an *in camera* hearing to determine whether the confidential informant had information that could benefit Petitioner's defense such that his or her identity should be disclosed to Petitioner. *See* RT 25-28. Petitioner contends that the transcript of the hearing should have been disclosed to his appellate counsel so appellate counsel could determine whether any issues should be raised on appeal regarding the *in camera* hearing. Pet. at 79. Petitioner contends that the Court of Appeal violated his Sixth and Fourteenth Amendment rights when it denied his motion to disclose the transcript of the *in camera* hearing regarding the identity of confidential informant to his appellate counsel.

### A.    Legal Standard

Under *Roviaro v. United States,* 353 U.S. 53, 59 (1957) the Supreme Court recognized the Government's privilege to withhold from disclosure the identity of confidential informants. The Supreme Court noted, however, that the scope of the privilege is limited. "Where the disclosure of the informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or essential to a fair determination of a cause, the privilege must give way." *Id.* at 60-61. The petitioner bears the burden of showing that disclosure would be relevant to at least one defense. *See United States v. Sai Keung Wong*, 886 F.2d 252, 256 (9th Cir. 1989) (citing *United States v. Buffington*, 815 F.2d 1292, 1299) (9th Cir. 1987)). He must show that he has more than a "mere suspicion" that the informant has information which will prove "relevant and helpful" or will be essential to a fair trial. *United States v. Amador-Galvan*, 9 F.3d 1414, 1417 (9th Cir. 1993). Once the threshold showing is made, a court must balance the "the public interest in protecting the flow of information against the individual's right to prepare his defense" in determining whether to disclose the identity of the confidential informant. *Roviaro,* 353 U.S. at 62. There is no bright line rule. *See id.* Whether a proper balance renders

34

nondisclosure erroneous depends on the particular circumstances of the case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.  *Id.*

### B.   Analysis

The Court of Appeal noted that under California law, "Subdivision (d) of section 1042 [of the Evidence Code] . . . provides that where the defendant demands disclosure of the identity of a confidential informant 'on the ground that the informant is a *material witness on the issue of guilt'* (emphasis added) [by the *Hobbs* court], a hearing must be held, and it must be conducted in camera and outside the presence of the defendant and his counsel if the prosecution so requests.'" *Turner,* slip op. at 6 (citing *People v. Hobbs,* 7 Cal. 4th 948, 961 (1994)).  After reviewing the transcript of the *in camera* hearing and the proceedings in the open court, the Court of Appeal concluded that the trial court did not err in denying Petitioner's disclosure motion.  Specifically it held that when an *in camera* hearing is held and the trial court reasonably concluded that the informant does not have knowledge of facts that would tend to exculpate the defendant, "disclosure of the identity of the informer is prohibited by Evidence Code section 1042, subdivision (d). . . ." *Turner,* slip op. at 7.  Furthermore, the Court of Appeal denied Petitioner's request to reconsider its order in which it refused to grant Petitioner's appellate counsel access to the transcript of the *in camera* hearing.  *Id.* at 7 n.1.

The Court of Appeal's decision to deny appellate counsel access to the sealed transcript is not contrary to, or unreasonable application of, federal law as set forth in *Roviaro.*  Once the trial court concluded that Petitioner had made the minimal threshold showing, it held an *in camera* hearing to assess the materiality of the confidential informant's information.  RT 27.  After the *in camera* hearing, the trial court ruled that the information provided by the confidential informant

was not material on the issue of Petitioner's guilt and there was no reasonable probability that nondisclosure would deprive Petitioner of a fair trial. RT 47. Ordinarily, an *in camera* review of the confidential information adequately protects an accused's right to a fair trial. *See Pennsylvania v. Ritchie,* 480 U.S. 39, 60 (1987) (holding that a defendant's "interest in ensuring a fair trial can be protected fully by requiring that the [confidential information] be submitted only to the trial court for *in camera* review"). The Court of Appeal reviewed the entire transcript of the proceeding including the sealed transcript, and concluded that the confidential informant did not have knowledge of facts that would tend to exculpate Petitioner. Under *Roviaro,* the Court of Appeal was only required to balance the public interest in the free flow of information against the defendant's interest in preparing a defense. Since the Court of Appeal found that the information revealed in the *in camera* hearing would not tend to help Petitioner's defense, the Court of Appeal found the balance was in favor of non-disclosure.

Moreover, this Court finds that the facts underlying the holding in *Rovario* are distinguishable from the facts here. In *Rovario,* defendant was convicted of sale and illegal transportation of heroin. 353 U.S. at 59. The confidential informant was an undercover employee of the Government who helped set up the narcotics transaction and who participated in it. *Id.* at 61-62. The Court found the confidential informant's identity and testimony "highly material" because the informant actually took part in the crime, and his testimony might have disclosed entrapment. In addition, the informant was the "only witness who might have testified to petitioner's lack of knowledge of the contents of the package." *Id.* at 64. In concluding the defendant's right to prepare a defense outweighed the public's interest in the free flow of information, the Court reasoned that since the informant was the sole participant other than the defendant in the transaction charged, he was the only witness who could have confirmed or contradicted the

36

testimony of the federal narcotics agents who observed the crime. *Id.* at 64-65. The Court held that under these circumstances, it was prejudicial error to withhold identity of the confidential informer. *Id.*

On the contrary, in the case at bar, the confidential informant provided information about *another* person's involvement in the burglary. Unlike the informant in *Roviaro,* this confidential informant could not contradict the testimony of the prosecution witnesses regarding Petitioner's involvement in the crime. Thus, disclosure would not be helpful to *Petitioner's* defense since the prosecution alleged that two people committed the burglary and the informer provided information about the "second responsible" for the burglary.

The Court of Appeal properly balanced Petitioner's interest in preparing a defense and the public's interest in protecting the flow of information. Thus, the Court of Appeal's denial of Petitioner's motion for disclosure is not contrary to, or an unreasonable application of the test set out in *Roviaro.*

## IX.     Ineffective Assistance of Appellate Counsel

Petitioner asserts that his appellate counsel rendered ineffective assistance on the grounds that appellate counsel 1) failed to challenge the trial court's ruling on a motion to suppress any in-court identifications;[8] 2) failed to challenge the trial court's refusal to instruct the jury on receiving stolen property as a lesser included offense of burglary; and 3) failed to challenge the insufficiency of the evidence of burglary.

### A.     Legal Standard

---

[8]During his appeal, Petitioner filed a motion *in propria persona* asserting that his appellate counsel was ineffective because he failed to challenge the trial court's denial of Petitioner's motion to suppress in-court identifications from Gatsos and Fuentes and the Court of Appeal issued a reasoned decision on that claim. Therefore, this court will review whether the decision of the Court of Appeal is contrary to or unreasonable application of the standard in *Strickland.*

The Due Process Clause of the Fourteenth Amendment guarantees a criminal defendant the effective assistance of counsel on his first appeal as of right. *See Evitts v. Lucey*, 469 U.S. 387, 391-405 (1985).[9]   Claims of ineffective assistance of appellate counsel are reviewed according to the standard set out in *Strickland. Miller v. Keeney*, 882 F.2d 1428, 1433 (9th Cir. 1989); *United States v. Birtle,* 792 F.2d 846, 847 (9th Cir. 1986).   A defendant therefore must show that counsel's advice fell below an objective standard of reasonableness ("performance prong") and that there is a reasonable probability that, but for counsel's unprofessional errors, he would have prevailed on appeal ("prejudice prong").   *Miller*, 882 F.2d at 1434 & n.9 (citing *Strickland*, 466 U.S. at 688, 694; *Birtle*, 792 F.2d at 849).   The *Strickland* framework for analyzing ineffective assistance of counsel claims is considered to be "clearly established Federal law, as determined by the Supreme Court of the United States" for the purposes of 28 U.S.C. § 2254(d) analysis.   *See Williams (Terry) v. Taylor*, 529 U.S. 362, 404-08 (2000).

Appellate counsel does not have a constitutional duty to raise every nonfrivolous issue requested by defendant.   *See Jones v. Barnes*, 463 U.S. 745, 751-54 (1983); *Gerlaugh v. Stewart*, 129 F.3d 1027, 1045 (9th Cir. 1997); *Miller*, 882 F.2d at 1434 n.10.   The weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy.   *See id.* at 1434 (footnote and citations omitted).   Appellate counsel therefore will frequently remain above an objective standard of competence and have caused his client no prejudice for the same reason--because he declined to raise a weak issue.   *See id.*

---

[9]Although the right to the effective assistance of counsel at trial is guaranteed to state criminal defendants by the Sixth Amendment as applied to the states through the Fourteenth, *see Lucey*, 469 U.S. at 392, the Sixth Amendment does not address a defendant's rights on appeal; the right to effective state appellate counsel is derived purely from the Fourteenth Amendment's due process guarantee.   *See id.*

### B.  Analysis

#### i.    *Failure to challenge denial of motion to suppress in-court identifications*

Petitioner's trial counsel moved *in limine* to suppress any in-court identifications on the grounds that the identification was unduly suggestive and that it violated his Fourth Amendment right against unreasonable searches and seizures on the grounds that he was not arrested when the police transported Petitioner to the schoolyard for identification purposes.  *See* RT 88, 171-215. This Court addresses the Court of Appeal's decision regarding Petitioner's claim that appellate counsel was ineffective for failing to challenge the trial court's denial of the motion to suppress in-court identification to determine whether the Court of Appeal's decision is contrary to, or an unreasonable application of, the *Strickland* standard.  *See Turner,* slip op. at 11-14.

In its decision, the Court of Appeal first set out the test to determine if appellate counsel was ineffective: "To establish entitlement to relief for ineffective assistance of counsel, the burden is on the [appellant] to show (1) [appellate] counsel failed to act in a manner to be expected of reasonably competent attorneys acting as diligent advocates and (2) it is reasonably probable a more favorable determination would have resulted in the absence of counsel's failings." *Turner,* slip op. at 12 (quoting *People v. Turner,* 7 Cal. App. 4th at 1219 (citing *People v. Lewis,* 50 Cal. 3d 262, 288 (1992))).  Under the first requirement, the Court of Appeal noted that "an attorney representing a criminal defendant generally has the right to control the trial tactics and strategy, despite differences of opinion or even open objections from the defendant." *Turner,* slip op. at 12 (quoting *Turner,* 7 Cal. 4th at 1220)  The Court of Appeal refused to second guess appellate counsel's choice of issues raised on appeal since Petitioner had not presented any evidence to demonstrate that "the failure to raise

certain issues cannot be explained on the basis of any knowledgeable choice of tactics." *Turner,* slip op. at 13.

Under the second requirement, the Court of Appeal rejected Petitioner's argument stating, "Where . . . counsel's failure to litigate Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must . . . prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability [that the outcome of the appeal would be different] in order to demonstrate actual prejudice." *Id.* (internal citations omitted). The Court of Appeal determined that no Fourth Amendment violation occurred when Petitioner was transported to the schoolyard for identification purposes because at that time, probable cause existed to arrest Petitioner and Petitioner was under arrest. Thus, the Court of Appeal, explained, Petitioner's Fourth Amendment claim lacked merit, and he failed to establish prejudice necessary to prevail on an ineffective assistance claim. Furthermore, the Court of Appeal found that the motion to suppress also failed on due process grounds since the schoolyard identification was not so unduly suggestive to warrant suppression. *Turner,* slip op. at 14.

The decision of the Court of Appeal is not contrary to ,or an unreasonable application of, the *Strickland* standard. Under the performance prong, Petitioner failed to establish that appellate counsel had no reasonable basis for failing to challenge the denial of the motion to suppress on appeal. The trial court found that Petitioner was lawfully arrested before he was transported to the schoolyard, and that the identification procedure was not unduly suggestive. RT 215; *Turner,* slip op. at 14. Appellate counsel does not have a constitutional duty to raise every non-frivolous issue requested by the defendant. *See Jones,* 463 U.S. at 751-54. Moreover, appellate counsel's decision not to raise this issue on appeal is not an unreasonable decision in light of this Court's own finding that the

identification procedure was not unduly suggestive.  *See Boag v. Raines,* 769 F.2d 1341, 1344 (9th Cir. 1985) ("Failure to raise a meritless argument does not constitute ineffective assistance of counsel.")  Thus, Petitioner failed to show that appellate counsel's performance was deficient.

Under the prejudice prong, the Court of Appeal properly determined that Petitioner did not establish that there was a fair probability that he would have had a more favorable result on appeal because his motion to suppress was based on meritless claims.  Therefore, the Court of Appeal's rejection of Petitioner's claim of ineffective assistance of counsel based on his decision not to challenge the denial of the motion to suppress is consistent with federal law.

> ii.    *Failure to challenge trial court's refusal to instruct on receiving stolen property as a lesser included offense of burglary.*

Petitioner further contends that his appellate counsel rendered ineffective assistance because he did not challenge the trial court's refusal to instruct the jury on the receiving stolen property as a lesser included offense of burglary.  Because receiving stolen property is not a lesser included offense of burglary, *In re Christopher S.,* 174 Cal. App. 3d 620, 623 (1985); *see also People v. Allen,* 21 Cal. 4th 846, 863-65 (1999), Petitioner's claim of ineffective assistance of counsel based on failure to challenge the trial court's refusal to instruct on receiving stolen property as a lesser included offense also fails.

> iii.    *Failure to challenge the sufficiency of the evidence for his burglary conviction*

Petitioner asserts that appellate counsel was ineffective for failing to challenge the sufficiency of the evidence for the burglary conviction.  Appellate counsel does not have a constitutional duty to raise every non-frivolous issue requested by defendant.  *See Jones*, 463 U.S. at 751-54; *Gerlaugh*, 129 F.3d at 1045; *Miller*, 882 F.2d at 1434 n.10.  Here, ample evidence supported

41

Petitioner's conviction for burglary. Gatsos identified Petitioner, the license plate number noted by Gatsos revealed that the Firebird was registered to Petitioner, Fuentes positively identified Petitioner as the driver of the Firebird after directly observing Petitioner's face, Petitioner admitted that he drove the car, and several stolen electronics equipment, including two VCRs, remote controls, and a computer monitor, were located in Petitioner's car. Because the evidence supporting Petitioner's burglary conviction is substantial, it cannot be said that appellate counsel's failure to challenge the sufficiency of the evidence for such conviction constitutes deficient performance. *See Miller,* 882 F.2d at 1434 (the weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy).

Since Petitioner has not established deficient performance with regard to this claim, this Court need not address the issue of prejudice. *See Siripongs v. Calderon*, 133 F.3d 732, 737 (9th Cir. 1998) (holding that it is unnecessary for a federal court considering a habeas ineffective assistance claim to address the prejudice prong of the *Strickland* test if the petitioner cannot even establish incompetence under the first prong). In sum, appellate counsel's failure to raise these claims does not amount to ineffective assistance of counsel under *Strickland.*

## X.      Ineffective Assistance of Trial Counsel

Petitioner also contends that his trial counsel provided ineffective assistance because he did not argue for a jury instruction on receiving stolen property as a lesser included offense of burglary. However, Petitioner concedes and the record demonstrates, that trial counsel did in fact request the trial court to instruct the jury on receiving stolen property as a lesser included offense of burglary. RT 442-44. Thus, Petitioner's contention that trial counsel did not "place a valid objection when the trial court refused" is unfounded and

unsupported by the record. Defense counsel rigorously argued in favor of instructing the jury on receiving stolen property even after the trial court correctly pointed out that receiving stolen property is not a lesser included offense of burglary. *See* RT 443. A trial counsel has no duty to continuously challenge a trial court's ruling on baseless grounds. *See Boag,* 769 F.2d at 1344. Thus, Petitioner has not demonstrated deficient performance by trial counsel. This Court need not consider whether there was prejudice. Petitioner's claim fails.

## **CONCLUSION**

For the foregoing reasons, the petition for the writ of habeas corpus is DENIED. The Clerk shall enter judgment in favor of the Respondent and close the file.

IT IS SO ORDERED.

DATE: September 28, 2006

_____
JEFFREY S. WHITE
United States District Judge

43